UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Lindsey H., | ) |
|     Plaintiff, | ) No. 24-cv-10771 |
| v. | ) Magistrate Judge Keri L. Holleb Hotaling |
| FRANK BISIGNANO[1], Commissioner of Social Security, | ) |
|     Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Lindsey H.[2] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") ("SSA") denying her disability benefits. The parties have filed cross motions for summary judgment.[3] As detailed below, Plaintiff's motion for summary judgment [Dkt. 21] is DENIED and Defendant's motion for summary judgment [Dkt. 25] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

1. **Procedural History**

On July 7, 2022, Plaintiff protectively filed a Title II application for disability and disability insurance benefits, alleging disability beginning September 15, 2021. [Administrative Record ("R.") 25.] On July 29, 2022, Plaintiff also filed a Title XVI application for supplemental security income. [R. 25.] Both claims were denied initially and on reconsideration. *Id*. On January 17, 2024, after an Administrative Hearing, an Administrative Law Judge ("ALJ") issued an unfavorable

---

[1] On May 7, 2025, Frank Bisignano, was sworn in as the Commissioner of Social Security and in accordance with Fed. R. Civ. Pro. Rule 25(d), Frank J Bisignano, Commissioner of Social Security, has been substituted as the defendant. [Dkt. 24.]

[2] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

[3] Defendant filed a "Response to Plaintiff's Motion for Summary Judgement" which the Court views as a cross motion for summary judgement.

1

decision. [R. 25-37.] The Appeals Council denied review on August 16, 2024 [R. 1], rendering the ALJ's April 24, 2024 decision the final decision of the Commissioner. 20 C.F.R. §404.981. On October 18, 2024, Plaintiff filed the instant action seeking review of the Commissioner's decision. [Dkt. 1.]

### 2. The ALJ's Decision

In the April 24, 2024 decision, the ALJ analyzed Plaintiff's claim following the SSA's usual five-step evaluation process to determine whether Plaintiff was disabled. [R. 25-37.] At Step One, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through June 30, 2023, and that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, September 15, 2021. [R. 27.] At Step Two, the ALJ found Plaintiff suffered from severe impairments of multiple sclerosis, major depressive disorder and generalized anxiety disorder.[4] *Id*. At Step Three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).[5] [R. 28.] In determining Plaintiff's mental impairments, the ALJ also analyzed the so-called Paragraph B and Paragraph C criteria for assessing mental impairments. The ALJ found Plaintiff had (i) a mild limitation in understanding, remembering or applying information, (ii) a moderate limitation in interacting with others, (iii) a moderate limitation in concentrating, persisting or maintaining pace, and (iv) a mild limitation in adapting or managing oneself. [R. 28-29.] The ALJ further found that the record did not establish that Plaintiff had

---

[4] While Plaintiff has also been diagnosed with degenerative disc disease of the lumbar spine and obesity, the ALJ did not find these were "severe" impairments. [R. 28.]

[5] The ALJ found "the evidence of record does not meet criteria required by [Listing 11.09]" for multiple sclerosis and "[s]pecifically, the record fails to support a finding of disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities." [R. 28.]

2

minimal capacity to adapt to changes in her environment, that Plaintiff had been receiving ongoing therapy or support to diminish her symptoms from her mental impairments, or that Plaintiff lived in a highly structured setting. [R. 29.]

Before Step Four, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> She can stand and/or walk for 4 hours in an 8-hour workday; and frequently push/pull with the bilateral lower extremities. She can frequently handle and finger bilaterally. The claimant can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl. The claimant can never work at unprotected heights, never work near moving mechanical parts, and never be required to operate a motor vehicle. The claimant can have occasional exposure to humidity and extreme heat. Due to moderate limitations in concentration, persistence or pace, the claimant is restricted to understanding, remembering, and carrying out simple instructions for simple, routine tasks. She is able to make simple work-related decisions. The claimant can have frequent interaction with supervisors, and occasional interaction with coworkers and the public. The claimant is able to be exposed to no more than occasional changes in job setting.

[R. 29-30.]

At Step Four, the ALJ concluded that Plaintiff is unable to perform any past relevant work. [R. 35.] At Step Five, however, the ALJ found Plaintiff capable of performing other jobs existing in significant numbers in the national economy. [R. 36.] Specifically, the ALJ determined, based on the Vocational Expert's ("VE") testimony, that Plaintiff would be able to perform the requirements of inspector/sorter (DOT# 529.687-114, SVP 2, light), production worker (DOT# 222.687-014, SVP 2, light), and production helper (DOT# 599.687-014, SVP 1, light). [R. 36-37.] Accordingly, the ALJ found that Plaintiff was not disabled from the alleged onset date through the date of the decision. [R. 37.]

### 3. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date

last insured to be eligible for disability insurance benefits. 20 C.F.R. § 404.131; *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017). In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018); *Hess v. O'Malley*, 92 F.4th 671, 676 (7th Cir. 2024); *see also* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). This "lax" standard is satisfied when the ALJ "minimally articulate[s] his or her justification for rejecting or accepting specific evidence of a disability." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) (internal signals omitted) (citing *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004)). Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and their conclusion. *Hess*, 92 F.4th at 676. Finally, while reviewing a commissioner's decision, the court does not second-guess the ALJ's judgment – the Court may not "substitute [its] own judgment for that of the Commissioner[,] reconsider facts, reweigh the evidence, resolve conflicts in the evidence, or decide questions of credibility." *Fitschen v. Kijakazi*, 86 F.4th 797, 802 (7th Cir. 2023).

**4.    Discussion**

Plaintiff argues that the ALJ erred by (1) failing to consider and account for the opinion of Dr. Malina; (2) failing to consider and account for the opinion of Dr. Graham; and (3) failing to offer a logical bridge and failing to properly assess MS and the evidence. The Court disagrees.

### A. Legal Standard.

An ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). However, an ALJ is required to "articulate in [their] determination or decision how persuasive [they] find **all** of the medical opinions…in your case record." 20 C.F.R. § 404.1520c(b) (emphasis added). In determining how persuasive they find the medical opinions and findings, an ALJ looks at five factors: supportability, consistency, relationship with the claimant, specialization, and other factors. Supportability and consistency are considered the most important factors and an ALJ must explain how they considered these two factors in evaluating a medical opinion. 20 C.F.R. § 404.1520c(b)(2). With respect to evaluating opinions under the supportability factor, the regulations explain that "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). With respect to evaluating opinions under the consistency factor, the regulations explain that "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

### B. The ALJ Properly Considered and Accounted for Dr. Malina's Opinion.

As required by the regulations, the ALJ reviewed Dr. Malina's medical findings and opinions and articulated how persuasive the ALJ found Dr. Malina's opinion to be. Despite finding Dr. Malina's opinion to only be partially persuasive, the ALJ gave reasoned consideration to all

the evidence of record, including Dr. Malina's opinion, and the ALJ created an RFC that is more restrictive than that proposed by the reviewing doctors. [R. 32-34.]

The ALJ articulated how Dr. Malina's findings and opinions were only "partially persuasive as his report of the claimant's limitations are vague and he does not provide a function-by-function analysis consistent with the criteria defined in the Social Security Regulations to determine disability." [R. 34.] The ALJ also described the findings from the Plaintiff's visit with Dr. Malina and noted how some of the findings were inconsistent with other evidence. Specifically, the ALJ detailed that while Plaintiff retained some cognitive strengths, "it was noted that she had significant impairment in simple attention and some slowing, possibly mood related, impaired memory…[h]owever, the claimant showed strengths in…working memory and reasoning…[t]he claimant was diagnosed with MS, major depressive disorder, recurrent, and generalized anxiety disorder. Yet during the neuropsychological evaluation, the claimant ambulated independently, had unremarkable gait, and anxious mood." [R. 32.] Thus, the Court finds the ALJ's opinion addressed both the supportability and consistency factors.

As explained above, under the regulations, the more objective medical evidence and supporting explanations support a medical opinion, the more persuasive the opinion will be. 20 C.F.R. § 404.1520c(c)(1). Likewise, the more consistent the medical opinion is with other evidence in the claim, the more persuasive it will be. 20 C.F.R. § 404.1520c(c)(2). Dr. Malina's summary and conclusions listed several observed impairments and recommendations [R. 481-82.] However, Dr. Malina's summary and conclusions lacked a function-by-function analysis to support his opinions, leading to the ALJ's reasonable conclusion that the opinion is vague. [R. 34.] Further, Dr. Malina's discussion of the evidence and inconsistencies therein, together with the ALJ's conclusion that Dr. Malina's opinion was vague, led to the ALJ's reasonable finding that Dr.

6

Malina's opinion was only partially persuasive.

The Seventh Circuit has emphasized that ALJ's "are subject to only the most minimal of articulation requirements." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). The ALJ must simply "provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings[.]" *Id*. at 1054 (internal citations omitted); *see also Elder*, 529 F.3d at 415 ("[W]e must allow that decision to stand so long as the ALJ "'minimally articulate[d]'" his reasons—a very deferential standard that we have, in fact, deemed "lax.""). By explaining why the opinion is vague and highlighting inconsistencies in the record, the Court finds the ALJ has met this standard.

The Court further notes that despite finding Dr. Malina's opinion to only be partially persuasive, it is clear the ALJ properly considered and assessed Dr. Malina's opinion in forming the RFC. The State Agency's initial findings in March 2023 and findings on reconsideration in August 2023 indicated that Plaintiff's mental impairments were not severe. [R. 34.] However, the ALJ, looking at the complete record, which included Dr. Malina's opinion, found the State Agency's determinations to be unpersuasive and found that Plaintiff's mental impairments *are* severe. *Id*. On reconsideration in August 2023, the State Agency determined Plaintiff capable of light work and provided a limited number of limitations. [*Id*.] The ALJ found the State Agency's determination to only be partially persuasive because the ALJ found the record as a whole, which included Dr. Malina's opinion, supported *additional* limitations beyond what the Agency proposed. *Id*. The ALJ ultimately forming an RFC that "was more limiting than that of any state agency doctor…illustrat[es] reasoned consideration given" to all the evidence presented. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019).

Plaintiff highlights that Dr. Malina's opinion explicitly states that Plaintiff has a

7

"significant impairment in simple attention" and contends that "the ALJ does not build a logical bridge from that acknowledgement to the RFC that purports to place Plaintiff in jobs requiring precisely *simple attention*[.]" [Dkt. 21, at 6.] Plaintiff is correct that Dr. Malina's findings stated that Plaintiff had significant impairments in simple attention. However, Dr. Malina's findings also stated that Plaintiff had "relatively better complex attention" and that Plaintiff "does retain some cognitive strengths." [R. 482.] These findings were in contrast to the State Agency's findings that Plaintiff's mental impairments were non-severe and that the only limitations should be "frequent handling and fingering bilaterally…avoid concentrated exposure to humidity and hazards due to MS and objective findings of decreased upper extremity strength." [R. 34.] Despite the Agency's findings, the ALJ formed an RFC that limits Plaintiff to "understanding, remembering, and carrying out simple instructions for simple, routine tasks…[and] simple work-related decisions." [R. 35.] This indicates that the ALJ considered the record as a whole, including Dr. Malina's opinion, when forming the RFC.

Plaintiff also contends that because Dr. Malina limited Plaintiff's driving to daytime and found visual perception to be mildly impaired, the ALJ erred by not creating an RFC with low-light limitations or by not even asking hypotheticals about such findings. [Dkt. 21, at 6.] Although Plaintiff is correct that Dr. Malina recommended Plaintiff "limit her driving to familiar areas during daytime hours, Dr. Malina explicitly noted that this recommendation is "dependent on her fatigue level, as this can certainly worsen the underlying [cognitive] impairment." [R. 482.] Moreover, the ALJ acknowledged this recommendation and then implemented *more restrictive* limitations in the RFC, namely that Plaintiff can "never work at unprotected heights, never work near moving mechanical parts, and never be required to operate a motor vehicle" as part of her job. [R. 35.] Again, this indicates the ALJ considered the record as a whole, including Dr. Malina's

opinion, when forming the RFC. The Court does not consider this to be an error.

          **C.**      **The ALJ Properly Considered and Accounted for Dr. Graham's Medical Findings.**

Plaintiff next argues the ALJ erred by failing to properly consider and account for Dr. Graham's "opinion", specifically highlighting Dr. Graham's findings that the "lesional burden in her brain is likely contributing to her cognitive impairment" and that Dr. Graham suspects that "cognitive symptoms may preclude her from working in the future." [Dkt. 21 at 6; R. 333.] However, under the regulations, Dr. Graham's report is considered medical evidence, not a medical opinion and does not require the same level of evaluation as a medical opinion. 20 C.F.R. § 404.1513(a)(3). Additionally, Dr. Graham's suspicion about Plaintiff's ability to work in the future addresses an issue reserved to the Commissioner. 20 C.F.R. § 404.1520b(c).

Dr. Graham's report is medical evidence and the ALJ properly considered and accounted for such evidence. Under the regulations, a medical opinion is "a statement from a medical source about what you can still do despite your impairment(s) **and** whether you have one or more impairment-related limitations or restrictions in the following abilities: (i) [y]our ability to perform physical demands of work activities…(ii) [y]our ability to perform mental demands of work activities…(iii) [y]our ability to perform other demands of work…and (iv) [y]our ability to adapt to environmental conditions[.]" 20 C.F.R. § 404.1513(a)(2) (emphasis added). In contrast, medical evidence is "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3). Dr. Graham's report does not opine on Plaintiff's abilities despite her impairments or her ability to perform any of the individual demands of work activities or abilities to adapt to environmental conditions. However, Dr. Graham does provide judgements on the

9

nature and severity of impairments, Plaintiff's clinical findings and diagnosis. [R. 333.] As such, Dr. Graham's report is considered to be medical evidence, not a medical opinion, and does not require the ALJ to evaluate the evidence in the same manner the ALJ would a medical opinion. However, it is clear the ALJ still considered Dr. Graham's report as medical evidence because the ALJ explicitly describes several of Plaintiff's visits with Dr. Graham in September 2021, November 2021, August 2022, and May 2023. [R. 31-33.] Even further, as noted above, the ALJ found the State Agency's determination that Plaintiff's mental impairments are not severe unpersuasive because the medical evidence of record, which includes Dr. Graham's report on Plaintiff's lesional burden and possible contribution to her cognitive impairment, was "more consistent with finding mental impairments are severe." [R. 34.]

Dr. Graham's claim that Plaintiff's cognitive symptoms may preclude her from working in the future addresses an issue that is reserved to the Commissioner and the ALJ was not required to address this statement in his opinion. 20 C.F.R. § 404.1520b(c). The regulations state that evidence in the form of statements about whether a claimant is or is not "disabled, blind, able to work, or able to perform regular or continuing work" address issues that are reserved for the Commissioner and thus are neither valuable nor persuasive. *Id*. Further, the regulations and the Courts have clarified that ALJs are not required to provide any analysis on how they considered such evidence. *Id*; *Jones v. Dudek*, 134 F.4th 991, 992 (7th Cir. 2025) (holding that "the ALJ was under no obligation to evaluate the statement for its persuasiveness because the medical examiner opined on an issue reserved to the Commissioner of Social Security"). Given the nature of Dr. Graham's report, the Court finds the ALJ properly considered and accounted for Dr. Graham's findings.

    **D.**  **The ALJ Offered a Logical Bridge Between the Evidence of Record and the RFC, and the ALJ Properly Assessed Plaintiff's MS.**

Plaintiff's final arguments claim that "the ALJ seems to get MS wrong" and takes a kitchen

sink approach towards listing out how and why the ALJ's approach to different parts of the RFC are incorrect or insufficient (*i.e.*, that the ALJ fails to build a logical bridge). [Dkt. 21, at 9-16.] Plaintiff further contends that the ALJ's opinion failed to address several pieces of record evidence, that the ALJ failed to pose additional hypotheticals for the VE at the Administrative Hearing, and that the ALJ mischaracterized the record. *Id*. In making all of these claims, Plaintiff is asking the Court to reweigh the evidence. The Court will not do so here.

As noted above, the Court's review is limited solely to whether the final decision by the Commissioner is based on substantial evidence. *Stephens*, 888 F.3d at 327; *Hess*, 92 F.4th at 676; *see also* 42 U.S.C. § 405(g). In conducting this review, the Court may not "substitute [its] own judgment for that of the Commissioner [,] reconsider facts, reweigh the evidence, resolve conflicts in the evidence, or decide questions of credibility." *Fitschen v. Kijakazi*, 86 F.4th at 802. The ALJ discussed, at length, how he formed Plaintiff's RFC and offered a logical bridge from the evidence evaluated to the RFC. After considering both Plaintiff and Plaintiff's husband's testimonies about Plaintiff's symptoms, the ALJ found that Plaintiff's "medically determinable impairments could be reasonably expected to cause the alleged symptoms." [R. 30-31.] The ALJ reviewed and discussed Plaintiff's medical history, Plaintiff's visits with her neurologist, Dr. Graham, Plaintiff's visit with Dr. Malina, findings from Plaintiff's consultative medical examinations, and findings from Plaintiff's consultative psychological evaluations, in determining that the Plaintiff's statements about the intensity, persistence, and limiting effects of her condition are inconsistent with the record. [R. 31-34.] The ALJ articulated how persuasive he found each of the medical opinions in the record, and why, before outlining the RFC he formed for Plaintiff. [R. 34-35.] The Court finds the ALJ based his opinion on substantial evidence and built a logical bridge between the evidence and his conclusions.

Yet, Plaintiff asks the Court to reweigh the evidence and in asking the Court to do so, Plaintiff presents the Court with several YouTube videos and internet sources that are not part of the administrative record. *See generally* Dkt. 21 at 7-12, 15-16. Plaintiff claims the citation to such "supporting explanations" goes towards the supportability factor. Dkt. 26 at 2. However, as Defendants have properly noted in their motion for summary judgement, the Court's review under 42 U.S.C. § 405(g) is limited to the administrative record. The Supreme Court itself has explicitly held that under 42 U.S.C. § 405(g), "neither party may put any additional evidence before the district court." *Mathews v. Weber,* 423 U.S. 261, 270 (1976). In compliance with the Supreme Court's decision, the Seventh Circuit has similarly rejected a plaintiff's evidence when it is is not part of the administrative record. *Maddox v. Saul*, 858 F. App'x 935, 939 (7th Cir. 2021) ("[W]e decline to consider excerpts of medical studies and diagnostic information about migraines that [Plaintiff] has submitted which are not part of the record."). As such, this Court will not entertain Plaintiff's arguments that are solely reliant on information from internet sources rather than evidence in the record. *Frank R. v. Kijakazi*, No. 19-cv-3223, 2021 WL 4264386, at *13 (N.D. Ill. Sept. 20, 2021) ("Because plaintiff has not identified any objective medical evidence or opinion testimony…the Court cannot fill this hole in the record by using websites chosen by plaintiff[.]").

Plaintiff argues that the ALJ's reliance on a consultative psychological evaluation which seems to show "Plaintiff's cognitive function is fine" and shows some improvement in Plaintiff's condition was problematic. [Dkt. 21, 7-9.] Plaintiff claims the ALJ relied on a facial analysis and that the ALJ needed to review all the exams and evidence "in the context of MS" and that "the ALJ does not second guess the normality [of certain cognitive tests] despite the overall record showing the extent of Plaintiff's disease[.]" *Id*. It is clear the ALJ did review the cognitive evaluations alongside the overall record. [R. 28-29, 33-34.] If the ALJ only reviewed what Plaintiff

12

calls the "normality" of such exams, it is likely the ALJ would have agreed with the State Agency's findings that Plaintiff's mental impairments were non-severe. [R. 34.] However, the ALJ determined Plaintiff's mental impairments *are* severe. [R. 34.] Further, the ALJ formed an RFC with limitations to accommodate Plaintiff's mental impairments despite the lack of such limitations proposed by the reviewing doctors. [R. 34-35.] The ALJ specifically referenced Plaintiff's cognitive limitations in concentration and restricted Plaintiff to "understanding, remembering, and carrying out simple instructions for simple, routine tasks." [R. 35.] Plaintiff has not identified any medical opinion in the record requiring greater limitations in the RFC and this Court rejects, as it has done before, the "quizzical argument" that the ALJ erred by placing greater restrictions in the RFC than recommended by the reviewing doctors. *Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021) ("A fundamental problem is [Plaintiff] offered no opinion from any doctor to set…limits, greater than those the ALJ set."); *Rice*, 384 F.3d 363, 370 (7th Cir. 2004) ("More importantly, there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ."); *Karla J.B. v. Saul*, 19-cv-50019, 2020 WL 3050220, at *4 (N.D. Ill. June 8, 2020) ("Plaintiff faults the ALJ for assigning limitations in her RFC when every doctor to opine on the issue believed no limitations were necessary…this is a quizzical argument.").

Plaintiff next raises arguments related to the ALJ's reliance on how Plaintiff's medication has helped with her symptoms. [Dkt. 21 at 9.] Plaintiff further contends that the ALJ "gets MS wrong" and that the ALJ particularly failed to understand Plaintiff's "relapsing-remitting MS" by noting that certain of Plaintiff's exams did not indicate further worsening of her condition. *Id*. at 11. Contrary to what Plaintiff claims, the ALJ did not suggest that "medication and 'stability' and some relatively normal exams mean function has come back in an ongoing, sustained way." *Id*. Rather, the ALJ simply noted that Plaintiff's "condition began to stabilize with Ocrevus and

13

physical therapy helped with her walking and balance." [R. 34 (internal citations omitted).] The ALJ is permitted to consider the impact of medication and treatment on Plaintiff's symptoms and did so here. 20 C.F.R. 404.1529(c)(3) ("We will consider all of the evidence presented…includ[ing]:…(iv) the type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms[.]"); *Hohman v. Kijakazi*, 72 F.4th 248, 252 (7th Cir. 2023) ("[W]hen objective medical evidence conflicts with a claimant's description of the intensity or persistence of pain, an ALJ must consider all evidence in the record—such as…course of treatment[.]") However, the ALJ's analysis did not stop at simply noting Plaintiff's course of treatment. The ALJ "considered the objective findings and testimony of difficulty walking for prolonged periods, and slightly decreased strength in the extremities[,]" including "her reports of balance difficulties" and accounted for such in the RFC. [R. 34-35.]

Plaintiff also claims, several times, that the ALJ opinion either does not mention certain evidence or that the ALJ missed certain evidence. For example, Plaintiff claims that the ALJ's decision does not address relapse, evidence of Plaintiff's Vitamin D deficiency, "barely acknowledges that [Plaintiff's] cervical spine was affected", and does not acknowledge the degeneration to her lumbar spine. [Dkt. 21 at 12, 14-15.] However, the Seventh Circuit has held that that an "ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053; *Gedatus*, 994 F.3d at 904 ("And if [Plaintiff] is complaining that the ALJ's summary was a partial summary of select evidence, that is equally unavailing because all summaries must be partial and selective."). Further, the record indicates that the State Agency's

14

reviewing doctors did consider the Plaintiff's spinal CTs and MRIs when forming their opinions and the ALJ relied on all medical opinions when forming the RFC. [R. 108, 111-113, 400, 34.]

In the same vein, Plaintiff argues that the ALJ missed several lines of evidence by not presenting the VE with hypotheticals about limitations to driving during daylight hours, jobs that are limited to daytime arrival and departure, and a claimant who requires "twice as long to do something as ordinarily expected". [Dkt. 21 at 14.] Plaintiff also contends that the record does not reflect that the VE "independently knew of all the limitations related to Plaintiff's inabilities." [Dkt. 21 at 16.] As Plaintiff admits in her own motion, "[t]he hypothetical posed to a VE need not include every physical limitation of a claimant, provided that the VE had the opportunity to learn of the claimant's limitations through, for example, an independent review of the medical records or through other questioning at the hearing." [Dkt. 21 at 16-17 (citing *Young v. Barnhard*, 362 F.3d 995, 1003 (7th Cir. 2004)).] At the outset of the ALJ's questioning, the ALJ asked the VE if she had "read the E section of the file and listened to the claimant's testimony regarding work history" and the VE confirmed that she had. [R. 79.] The ALJ then posed five hypotheticals with different limitations, each of which the VE considered and responded to. [R. 79-83]. Following the ALJ's questioning, Plaintiff's counsel had an opportunity to question the VE and did so. If Plaintiff and Plaintiff's counsel believed that the VE was not presented with all of the relevant hypotheticals or had concerns about the information the VE reviewed, they had an opportunity to raise these concerns at the Administrative Hearing. However, Plaintiff's counsel did not raise any of their own hypotheticals on these points.

Plaintiff also argues that the ALJ's approach to certain limitations in the RFC are insufficient. For example, Plaintiff claims that the ALJ's approach to heat in the RFC is insufficient and that the ALJ, again, fails to build a logical bridge. [Dkt. 21, at 12.] The ALJ found that due to

15

Plaintiff's sensitivity to heat/humidity, the Plaintiff can only have "occasional exposure to humidity and extreme heat." [R. 35.] Plaintiff claims that this is insufficient because Plaintiff overheats due to her symptoms and the ALJ has not offered a logical bridge from the evidence to how Plaintiff would be able to endure extreme heat for up to one-third of the day. [Dkt. 21, at 12.] However, the ALJ explicitly noted that he was "protectively" forming limitations "in consideration of [Plaintiff's] reports of balance difficulties and sensitivity to heat/humidity." [R. 35.] The ALJ did this, again, despite the fact that the reviewing doctors did not propose such a limitation. The most restrictive limitation proposed by the State Agency was only to avoid concentrated exposure to humidity. [R. 34.] As noted previously, an ALJ must only minimally articulate how they reached a conclusion and the Court finds the ALJ did so here. *Warnell*, 97 F.4th at 1053; *Elder*, 529 F.3d at 415.

Lastly, Plaintiff raises a concern that the ALJ inaccurately characterized the record when he stated there was "1+ edema of right ankle and trace edema on left ankle" while the medical record indicates that there is "no pedal edema." [Dkt. 21, at 16; R. 31, 376.] Plaintiff is correct. The ALJ did mischaracterize the record. Dr. Graham's notes stated "1+ right ankle" and "trace left ankle" with respect to reflexes. Dr. Graham did not associate this evaluation with pedal edema and explicitly states that "there is no pedal edema." [R. 376.] However, as discussed throughout this opinion, the Court finds there is substantial evidence, even absent this mischaracterization, to support the ALJ's conclusion and RFC. As such, the Court finds this mischaracterization harmless error. *Catt v. Colvin*, No. 12-cv-00876-TWP-DKL, 2013 WL 5309893, at *5 (S.D. Ind. Sept. 23, 2013) ("Because the ALJ would have made the same decision whether there was this mischaracterization or not, the Court finds this mischaracterization harmless error.").

16

5. Conclusion

For the reasons detailed above, the Court declines to remand this matter. Therefore, Plaintiff's motion for summary judgment [Dkt. 21] is DENIED and Defendant's motion for summary judgment [Dkt. 25] is GRANTED. The final decision of the Commissioner denying benefits is affirmed.

**ENTERED: January 6, 2026**

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge